TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0141
    E-mail:   Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00625-JAK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT KYLE CONLEY |
| v. | |
| KYLE CONLEY, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Dan G. Boyle, hereby files its sentencing position.

//

//

//

This sentencing position is based upon the attached memorandum of points and authorities and exhibits, the Presentence Investigation Report, the United States Probation Office's Recommendation Letter, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 17, 2021                     Respectfully submitted,

                                        TRACY L. WILKISON
                                        Acting United States Attorney

                                        BRANDON D. FOX
                                        Assistant United States Attorney
                                        Chief, Criminal Division
                                        STEVEN R. WELK
                                        Assistant United States Attorney
                                        Chief, Asset Forfeiture Division


                                          /s/
                                        ─────────────────────────────
                                        DAN G. BOYLE
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In October of 2019, defendant Kyle Conley (the "defendant") attempted import nearly one kilogram of diluted liquid Methylenedioxymethamphetamine ("Liquid MDMA") which he had purchased online from an unidentified contact abroad using virtual currency. The Liquid MDMA was intercepted by U.S. customs agents, however, and after a controlled delivery operation, defendant was arrested and made a full confession.

Based on this conduct, on December 22, 2020, defendant pleaded guilty to a single-count information in this case, which charged defendant with Attempted Importation of a Controlled Substance, in violation of 21 U.S.C. § 963; 952(e). (Dkt Nos. 1, 4.)

The United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") and Recommendation Letter on April 22, 2021. (Dkt Nos. 18, 19.)  The USPO calculated a total offense level of 19 and a criminal history category of I, yielding a total imprisonment range of 30-37 months under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), a term of supervised release to be one to three years, and the statutorily mandatory special assessment to be $100. The USPO has recommended a downward variance from the Guidelines, and recommends a sentence of three years' probation. (Dkt No. 18.)

The government agrees with the USPO's recommended sentence, and agrees in part to the USPO's calculation of the adjusted offense level and criminal history, but pursuant to the plea agreement between the parties, the government has arrived at different guidelines calculations, for the reasons stated herein.

Assuming that the Court grants this agreed-upon requested variance, the government concurs with the USPO's sentencing recommendation and requests that defendant be sentenced to: (1) a term of 36 months' probation; (2) a $10,000 fine; and (3) a mandatory special assessment of $100.

**II.   STATEMENT OF FACTS**

Pursuant to the agreed upon statement of facts in the Defendant's plea agreement (Dkt No. 4) the parties agreed on the following facts:

Beginning on an unknown date and until on or about October 2, 2019, in Los Angeles County, within the Central District of California and elsewhere, defendant attempted to import approximately 970 grams of Liquid MDMA, which defendant intended to further refine and process into a useable powder form. Specifically, defendant used the "Wickr" smartphone application to contact an individual identified as "vangrails," from whom the defendant purchased the Liquid MDMA using cryptocurrency transferred from an online wallet. Defendant understood that the Liquid MDMA would be shipped from the Netherlands, or another location outside the United States, to defendant's home in Los Angeles County.

The Liquid MDMA was intercepted by U.S. customs agents, who executed a controlled delivery operation on or about October 2, 2019. During that operation, federal agents discovered that defendant possessed approximately 175 tablets of MDMA, as well as approximately 18 grams of MDMA in powder form. At the time defendant possessed this MDMA, defendant also possessed approximately 105 grams of cocaine in powder form, which is a Schedule II controlled substance, and approximately 27 grams of ketamine, which is a Schedule III

controlled substance. Defendant intended to distribute some or all of this MDMA, cocaine, and ketamine to others.

Pursuant to a plea agreement, defendant waived indictment by grand jury and agreed to plead guilty to a single-count information charging a violation of 21 U.S.C. § 963, 952(e) (Attempted Importation of a Controlled Substance).  As part of this plea agreement, Defendant and the USAO agreed that the Liquid MDMA would have been substantially reduced in weight during processing into a useable powder form for consumption. Accordingly, the defendant and the USAO agreed that, for sentencing purposes, the total converted drug weight of all narcotics described in the factual basis should be at least 60 kilograms, but less than 80 kilograms.

**III. THE PRESENTENCE REPORT**

The USPO calculated defendant's adjusted offense level as 22, based on the following calculation:

| | | |
|---|---|---|
| Base Offense Level | 24 | U.S.S.G. § 2D1.1(C)(8) |
| Specific Offense Characteristics: | | |
| Safety Valve Criteria | -2 | U.S.S.G. § 2D1.1(b)(18) |
| Total Offense Level: | 22 | |

(See PSR ¶¶ 22-36.)  After a three-point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, the USPO calculated defendant's total offense level as 19. (PSR ¶ 37.)

The government does not object to the USPO's calculation of defendant's criminal history score and category, which it determined, respectively, to be 0 and I. (PSR ¶ 43.)

While government does not dispute the accuracy of the USPO's calculations, as noted above, in the plea agreement the government

3

agreed with defendant that the total converted drug weight of all narcotics described in the factual basis should be at least 60 kilograms, but less than 80 kilograms. The government stands by this agreement, which reflected the parties' understanding at the time of the plea agreement, as detailed below.

**IV. THE GOVERNMENT'S SENTENCING POSITION**

    **A. Two-Level Adjustment Pursuant to U.S.S.G. § 2D1.1(b)(18)**

The government concurs with the USPO that a 2-level downward adjustment under U.S.S.G. § 2D1.1(b)(18) applies in this case because defendant has met the safety valve criteria set forth in 18 U.S.C. § 3553(f).  Pursuant to U.S.S.G. § 2D1.1(b)(18), the Guidelines provide for a two-level downward adjustment where an offender fulfills the safety valve criteria set forth in 18 U.S.C. § 3553(f). Here defendant has satisfied all criteria.  Defendant made a complete proffer and attempted cooperation, well beyond what is statutorily required by 18 U.S.C. § 3553(f)(5).  While defendant ultimately did not have information which justified further cooperation with the government, he has fulfilled the in 18 U.S.C. § 3553(f) requirements. Accordingly, the two-level downward adjustment is appropriate here.

    **B. The Court Should Apply an Agreed-Upon Two-Level Downward Variance**

As reflected in the plea agreement (Dkt No. 32, at 4, n.1), the court system in the Central District of California is experiencing an unprecedented backlog due to the significant disruptions arising from the COVID-19 virus.  Accordingly, in the plea agreement, the government agreed to request a two-level downward variance here to reflect the defendant's early acceptance of responsibility and accompanying waivers intended to reduce this judicial backlog,

4

including: (1) waiving any right to presence and pleading guilty at the earliest opportunity by VTC (or telephone, if VTC is not reasonably available); (2) waiving any right to presence and agreeing to be sentenced by VTC (or telephone, if VTC is not reasonably available) should the Central District of California's General Order allow for it; (3) agreeing to appear at all other times by VTC or telephone; and (4) agreed upon waivers of appellate rights.  Thus, the government respectfully requests such a two-level downward variance.

### C. The Court Should Apply the Agreed-Upon Converted Drug Weight

As detailed in the parties' plea agreement, the government and defendant agreed that, for sentencing purposes, the converted drug weight of all narcotics seized should be at least 60 kilograms, but less than 80 kilograms. (See Dkt No. XX, ¶ 23-24.)  As detailed in the plea agreement, this agreement was based on the fact that the narcotics intercepted by CBP were in diluted and non-usable form, and would have been distilled down to a usable form, resulting in a substantially-reduced drug weight had the narcotics been rendered usable. In addition, COVID-19 related disruptions resulted in delays in obtaining and confirming lab results for numerous substances seized from defendant's bag, and thus the parties negotiated an agreed-upon converted drug weight in light of these pandemic-related delays. This agreed-upon converted drug weight is material to the plea agreement, and properly reflected both the uncertainly of these relatively-novel factual circumstances, the desire to bring this matter to a swift resolution without the need for further expert testing of the diluted narcotics, and the undeniably serious impact

that COVID-19 has had on the operations of the government, law enforcement, and all citizens.

Applying this agreed-upon converted drug eight, as detailed in paragraph 13 of the plea agreement, would result in a total offense 13:

- a base offense level of 20, pursuant to the parties plea agreement and U.S.S.G. § 2D1.1(C)(8);
- minus 3 points for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1;
- minus 2 points for meeting the safety-valve elements, pursuant to U.S.S.G. § 2D1.1(b)(18); and
- An agreed-upon two-level downward variance based on defendant's acceptance of certain COVID-19 related waivers (as detailed above).

The government respectfully requests that the Court apply this agreed upon converted drug weight and resulting offense level, but as described below, even were the Court to apply the USPO's calculations, applying the USPO's corresponding recommended downward variance would nonetheless result in the same recommended sentence.

### D. The Government Concurs with the USPO's Sentencing Recommendation

While government arrives at the result differently, as stated above, the government ultimately concurs with the USPO's recommendation that the Court sentence defendant to a 36-month term of probation, a $10,000 fine, and to pay $100 to the United States in satisfaction of the mandatory special assessment.

The government concurs with USPO's recommendation of a downward variance here and sentence of probation here, regardless of how the

6

Court calculates the converted drug weight. A 36-month term of probation appropriately reflects the nature and circumstances of the offense and this offender. See 18 U.S.C. §§ 3553(a)(2)(A-B). The defendant made a full confession immediately and made good faith, albeit unsuccessful, attempt at cooperation. Defendant agreed to waive indictment and make a prompt plea, and despite extensive COVID-19 related delays in obtaining lab results confirming the nature of the narcotics at issue, defendant never attempted to dispute the seriousness of his conduct or back out of his acceptance of responsibility. While defendant attempted to import a significant amount of narcotics, which is a serious offence, the bulk of these narcotics were intercepted prior to delivery. In addition, the narcotics found on defendant were in smaller quantities, and while defendant admitted an intent to distribute some of these drugs, the defendant's documented narcotics addition suggests that some portion of these narcotics were intended to satisfy that addiction.

A sentence of probation here is sufficient to promote respect for the law and provide adequate deterrence. Defendant has no prior criminal history, has generally remained gainfully employed since his offending conduct, and has complied with all terms of supervision. The government is confident in USPO's ability to supervise the defendant, and in the event that defendant violates the terms of his probation, incarceration would very likely be warranted. At the present stage, however, a sentence of probation reflects the requirement of 18 U.S.C. §3553(a) that a sentence be sufficient, but not greater than necessary, to support the purposes stated in that section.

## V.   CONCLUSION

For the foregoing reasons, a sentence of 36 months' probation; a $10,000 fine; and a $100 special assessment would be sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).  The government respectfully requests that the Court sentence defendant accordingly.